UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                      NORTHERN DIVISION

JOSE EVENOR TABOADA A.                                    PLAINTIFF

VS.                                CIVIL ACTION NO. 3:18CV883TSL-RHW

AMFIRST INSURANCE COMPANY                                 DEFENDANT


                    MEMORANDUM OPINION AND ORDER

     Plaintiff Jose Evenor Taboada A. has brought this action

pursuant to 9 U.S.C. § 4 to compel arbitration of his claims

against defendant AmFirst Insurance Company (AmFirst) relating to

its alleged breach of a policy of hospitalization insurance

alleged to have been issued by AmFirst in 2004 and thereafter

renewed annually through 2018.  Plaintiff has now filed a motion

to compel arbitration.  AmFirst has responded in opposition to his

motion.  The court, having considered the memoranda of

authorities, together with attachments, submitted by the parties,

concludes that plaintiff's motion should be granted in part and

denied in part.

     According to the complaint, in 2004, plaintiff purchased a

hospitalization policy from AmFirst covering him and his wife.

The policy was assigned Certificate Number 9215.  By its terms,

the policy was renewable annually upon payment of the renewal

premium.[1]  Plaintiff alleges that yearly, from 2005 through 2018,

---

     [1]   The policy recited:
     Through its assigned agent, the Company will offer
     renewal of this policy at the rates and terms that

he was notified of the renewal premium and of any modifications to the policy (which, he states, were only minor and mostly improvements to benefits), and that each year, he remitted the renewal premium, thereby continuing his coverage.  He states that his premiums were accepted and each renewal was acknowledged to be a renewal of his original policy, Certificate Number 9215.

Plaintiff alleges that in 2017, his wife required a liver transplant.  He states that although his policy provided coverage of $150,000 for organ transplantation, when her providers sought confirmation of coverage under the policy, AmFirst, through its policy administrator, denied coverage on the basis that plaintiff's policy had been amended and/or replaced by a policy which contained exclusions for "[a]ny claim of treatment related to organ transplantation...." and for "[i]llnesses and diseases as a result of Alcoholism, Drug abuse or addiction to any substance, however caused and consequences or variations thereof."  Plaintiff thus paid the full costs of the transplant (in excess of $500,000) out of pocket.

Plaintiff asserts that in communications with the policy administrator regarding the denial, he learned for the first time

---

prevail on that date for the corresponding class.  Such offer may be accepted through payment of the premium within thirty (30) days of the date of renewal.  Upon payment of each renewal, a new Certificate of Coverage shall be issued as evidence of effectiveness of the insurance.

that AmFirst had purported, without his knowledge, to have substituted his policy with one issued by an off-shore company located in Bermuda, AmFirst Ltd., which substitute policy supposedly contained "many new exclusions of which he was never made aware and to which he never consented or agreed." Plaintiff alleges that despite extensive communications with AmFirst, through its administrator and/or counsel, AmFirst has continued to deny the claim, maintaining that the policy in effect for plaintiff and his wife during 2017 was not the policy he purchased in 2004 and renewed annually since then but rather was an entirely different policy with terms he had never seen and a company of which he had never heard.

Plaintiff submitted to the American Arbitration Association (AAA) a demand for arbitration pursuant to the following arbitration provision in his 2004 policy:

> DISPUTES AND REMEDIES: The parties agree that any and all disputes, claims or controversies that may arise from or in relation to this policy, or its alleged infringement, which the contracting parties do not resolve, shall be submitted to final and binding arbitration. Such arbitration shall be conducted in the City of Jackson, Mississippi, USA, pursuant to the Rules of Commercial Arbitration of the American Arbitration Association and the judgment or any concession rendered in such arbitration may be filed in any state or federal court in said city. Such arbitration shall be the only remedy for any dispute, claims or controversies relating to the policy.
> ...
> GOVERNING LAW: Any issue relating to the interpretation of this policy, including matters relating to the information of the Insured on the request for insurance, [or] the issuance of this policy, shall be resolved

3

> pursuant to the contractual laws of the State of Mississippi.

The AAA notified AmFirst of plaintiff's demand, and advised that since the arbitration arose out of a consumer agreement, then the Consumer Arbitration Rules would apply. It further advised that before it would proceed with administration of the arbitration, AmFirst would be required to waive certain provisions of the agreement that were non-compliant with AAA's Consumer Arbitration Rules and/or Protocols, including a limitation-on-damages provision, and would be required to submit its arbitration agreement for expedited review at a cost of $250. AmFirst declined, advising of its position that plaintiff was seeking to arbitrate against the wrong party under the wrong policy and wrong arbitration agreement and that the AAA's determination that the Consumer Arbitration Rules applied was contrary to the parties' agreement in any event. The AAA, in turn, declined to administer the case, following which plaintiff brought the present action to compel arbitration and has now moved to compel arbitration. In response, AmFirst takes the position that plaintiff's motion to compel arbitration should be denied as he is "seeking to compel arbitration against the wrong party, under the wrong health insurance policy, and under the wrong arbitration agreement." AmFirst maintains that while it did issue the original 2004 policy, thereafter, AmFirst Ltd. assumed that policy, and from

that point on, AmFirst Ltd., and not AmFirst, has been the insurer. AmFirst Ltd., it argues, has issued each of the renewal policies, including the policy in effect in 2017, when plaintiff's wife had the liver transplant; and while that policy also contains an arbitration provision (with somewhat different terms), the proper party to direct any complaint to compel arbitration is AmFirst Ltd., not AmFirst.

### Arbitrability is for the Arbitrator

Section 2 of the Federal Arbitration Act states:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Under Section 4 of the FAA, "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (quoting 9 U.S.C. § 4). The court must order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

"Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). As a matter of contract, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" Id. (quoting Rent-A-Center, 561 U.S. at 68-69, 130 S. Ct. 2772). "[A]n 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" Id. (quoting Rent-A-Center, 561 U.S., at 70, 130 S. Ct. 2772). Where there is clear and unmistakable evidence of the parties' intent to delegate such threshold questions to the arbitrator, then it is for the arbitrator, not the court to decide these matters, even if the court considers the position of the party seeking arbitration to be "wholly groundless". Id.

The arbitration provision in the 2004 policy issued by AmFirst states that "arbitration shall be conducted ... pursuant to the Rules of Commercial Arbitration of the American Arbitration

Association ...." The Fifth Circuit has held that, "generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes ... 'clear and unmistakable' evidence" of the parties' intent to have the arbitrator decide questions regarding the validity and enforceability of the arbitration provision. Arnold v. Homeaway, Inc., 890 F.3d 546, 552 (5th Cir. 2018) (citing Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co., 687 F.3d 671, 674–75 (5th Cir. 2012)).[2]

As a preliminary matter, however, the court must decide the "first, and perhaps most obvious question [of] whether there is a contract between the parties at all." Arnold, 890 F.3d at 550. With respect to this issue, the Supreme Court has distinguished between "validity" or "enforceability" challenges and "formation" or "existence" challenges. Id. (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 n.2, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010); Buckey Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)). "The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." Buckeye, 546 U.S. at 444 n.1, 126 S. Ct. 1204. See Arnold, 890 F.3d at 550 ("Though the difference between formation

---

[2] AmFirst does not challenge the validity of the delegation provision itself. On the contrary, it acknowledges that plaintiff is "correct that, by stipulating to the AAA's Commercial Rules, the parties delegated certain questions of arbitrability to the arbitrator."

7

and validity may be unclear at the margins, ... the category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.'") (quoting Buckeye, 546 U.S. at 444 n.1, 126 S. Ct. 1204). Regardless of any delegation provision, a party's challenge to the "very existence of a contract" containing the relevant arbitration agreement is in all instances a matter for the court to decide. Arnold, 890 F.3d at 550 (citing Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004)).

In the case at bar, there is no dispute that in 2004, a contract was formed between these parties that contained an arbitration agreement which plaintiff now seeks to enforce. While AmFirst maintains that the arbitration provision in the 2004 policy "is no longer valid and no longer exists" since that policy was assumed by AmFirst Ltd. and later expired upon AmFirst Ltd.'s issuance of successive renewal policies, AmFirst does not dispute that a valid arbitration agreement was, in fact, formed between the parties herein. In the court's opinion, AmFirst's challenge goes to the enforceability of the arbitration provision, not to its existence. Cf. Cross Link, Inc. v. Salt River Constr. Corp., No. 16-CV-05412-JSW, 2017 WL 4351729, at *4 (N.D. Cal. May 8, 2017) (finding that since parties agreed to arbitrate

arbitrability, arbitrator did not exceed his powers when he went forward with arbitration proceedings after respondent asserted that there was no agreement to arbitrate as contract had expired) (citing Camping Constr. Co. v. District Council of Iron Workers, 915 F.2d 1333, 1340 (9th Cir. 1990), which stated, "once it is found that a contract did exist at some time, the questions of whether that contract has expired, or has been terminated or repudiated, may well present arbitrable issues, depending upon the language of the agreed-upon arbitration clause."); Allscripts Healthcare, LLC v. Etransmedia Tech., Inc., 188 F. Supp. 3d 696, 703 (N.D. Ill. 2016) (holding that arbitration agreements in expired contracts do not represent an exception to the principle that courts should respect clear and unmistakable delegations of arbitrability questions to arbitrators).

Even where there is no delegation provision, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye, 546 U.S. at 449, 126 S. Ct. 1204. "A party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate", because "'[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" Rent-A-Ctr., 561 U.S. at 70-71, 130 S. Ct. 2772 (quoting Buckeye, 546 U.S. at 445, 126 S. Ct. 1204). See also New

9

Prime Inc. v. Oliveira, 139 S. Ct. 532, 538, 202 L. Ed. 2d 536 (2019) ("Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration."); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (challenge that goes to the validity of agreement as a whole, and not just to validity of arbitration agreement, is for arbitrator, not court). AmFirst's arguments herein do not go specifically to the validity or enforceability of the arbitration provision in the 2004 policy but rather to the validity or enforceability of the policy as a whole. There are matters for the arbitrator to decide.

### Arbitration Procedure

Plaintiff seeks an order not only compelling arbitration, but directing that such arbitration be administered by the AAA under its Consumer Arbitration Rules, as he contends is required by the parties' arbitration agreement. See Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (internal quotation marks and brackets omitted). (FAA requires courts "rigorously" to "enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted."). In

response, AmFirst submits that although the subject arbitration agreement states that arbitration shall be conducted "pursuant to the Rules of Commercial Arbitration of the American Arbitration Association", the agreement does not require that arbitration be conducted *by the AAA*. AmFirst further argues that if the court does compel arbitration, the court should appoint an arbitrator under 9 U.S.C. § 5, and order that arbitration be conducted before that arbitrator and not the AAA.

> Section 5 of the FAA states:
>
> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.
>
> Rule R-2 of the AAA Commercial Arbitration Rules states:
>
> When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. … Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

AAA Commercial Arbitration Rules and Mediation Procedures, R-2.

11

A majority of courts recognize a distinction between agreements requiring a proceeding "administered by" a particular arbitral forum and those providing for a proceeding conducted "in accordance with" the named forum's rules. Dean v. Heritage Healthcare of Ridgeway, LLC, 408 S.C. 371, 383, 759 S.E.2d 727, 733 (2014).

> In the case of proceedings "administered by" a named forum, most courts view the forum selected as an integral term of the agreement because it is an express statement of the parties' intent to arbitrate exclusively before that forum; therefore, if the forum is unavailable, a material term of the agreement has failed, rendering the entire arbitration agreement invalid.
>
> Conversely, in the case of proceedings conducted "in accordance with" a named forum's rules, most courts view that forum "selection," if it was intended to serve as such, as an ancillary consideration to the parties' primary intent of arbitrating, in front of any arbitrator, while using a set of pre-specified rules; therefore, if the forum itself is unavailable, courts nonetheless uphold the arbitration agreement and compel arbitration in an alternate forum, so long as the alternate forum follows the agreed-upon rules.

Id. See Covenant Health & Rehab. of Picayune, L.P. v. Estate of Moulds ex rel. Braddock, 14 So. 3d 695 (Miss. 2009) (court could not pick an arbitrator if AAA was unavailable where parties' agreement provided for "by binding arbitration administered by the American Arbitration Association...."). Most courts considering the issue also hold that Rule R-2 of the AAA's Commercial Arbitration Rules merely "authorizes" the AAA to administer the arbitration and does not require administration exclusively *by the*

*AAA*. See, e.g., Dean v. Heritage Healthcare of Ridgeway, LLC, 759 S.E.2d 727, 735 (S.C. 2014).

Given that the parties' agreement requires only that arbitration be administered in accordance with the AAA's Commercial Arbitration Rules, not that it be administered by the AAA; that the subject rules do not require that arbitration be administered by the AAA; and that the AAA has declined to administer the arbitration, the court, consistent with the parties' agreement, will appoint an arbitrator to conduct the arbitration in accordance with the terms of the parties' agreement, which require that said arbitration be conducted pursuant to the AAA's Commercial Arbitration Rules.[3]

Conclusion

Based on the foregoing, it is ordered that plaintiff's motion to compel arbitration is granted to the extent that he seeks an order compelling arbitration of his claims, but the motion is denied to the extent that plaintiff seeks an order directing that said arbitration be conducted by the AAA. It is ordered, instead, that the parties shall undertake to mutually agree on an arbitrator and inform the court of their selection within twenty

---

[3] Although the AAA determined that under the Commercial Arbitration Rules, the Consumer Arbitration Rules actually apply as this was a consumer transaction, the court expresses no opinion on this matter as it is an an issue for the arbitrator.

days hereof, failing which the court will appoint an arbitrator for them.[4]

SO ORDERED this 6th day of August, 2019.

/s/Tom S. Lee  
UNITED STATES DISTRICT JUDGE

---

[4] The parties are not required to select an arbitrator from the AAA.