```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION

JOSE EVENOR TABOADA A.                              PETITIONER

VS.                         CIVIL ACTION NO. 3:18-CV-883-TSL-RHW

AMFIRST INSURANCE COMPANY                           RESPONDENT
```

MEMORANDUM OPINION AND ORDER

Before the court are the motion of petitioner Jose Evenor Taboada to vacate arbitrator's award pursuant to § 10 of the Federal Arbitration Act (FAA), 9 U.S.C. § 10, and the motion of respondent AmFirst Insurance Company (AmFirst USA) to confirm arbitrator's award pursuant to § 9.[1]  The court, having reviewed and considered the motions, concludes that the motion to vacate should be denied and the motion to confirm arbitrator's award should be granted.

Previous Litigation

In December 2018, petitioner Taboada, pursuant to FAA § 4, filed in this court a complaint to compel arbitration against AmFirst USA under the terms of a policy of health insurance

---

[1] The motion to confirm arbitrator's award is presented as having been filed by "AmFirst Insurance Company ("AmFirst") and AmFirst Insurance Company Ltd., as assignee and successor-in-interest to AmFirst ("AmFirst Bermuda")."  However, AmFirst Bermuda is not a party to this action.  Nevertheless, for reasons made clear herein, AmFirst Bermuda is a necessary party to this action, and the court thus interprets the motion to confirm as including a request to join AmFirst Bermuda as a necessary party, which request is granted.

1

originally issued by AmFirst USA to petitioner in May 2004 and allegedly renewed annually in each succeeding year, through 2018. Petitioner alleged that when his wife was diagnosed with liver cirrhosis in June 2017 and subsequently underwent a liver transplant in August 2017, AmFirst wrongly denied coverage, citing policy provisions excluding coverage for alcohol-related illness and for organ transplants. Petitioner alleged that his AmFirst policy, as issued in 2004 and as modified from time to time, contained no such exclusions and, in fact, expressly provided coverage of up to $150,000 for organ transplants. Petitioner alleged that AmFirst USA had refused his demand for arbitration under the terms of his 2004 policy, taking the position that it was no longer his insurer as the policy it originally issued to him in 2004 had been assigned in 2005 to AmFirst, Ltd. (AmFirst Bermuda), an affiliated but separate company, and that AmFirst Bermuda, and not AmFirst USA, had issued each of petitioner's subsequent policies, including the 2017 policy that excluded coverage for organ transplants and treatment for alcohol-related illness. AmFirst USA thus asserted that petitioner was demanding arbitration against the wrong party under the wrong policy. In answer to petitioner's complaint herein, AmFirst USA maintained that same position.

On March 8, 2019, petitioner filed a motion to compel arbitration. Therein, he insisted that the 2004 policy was the

operative policy at all times, including when his wife underwent treatment in 2017, because there was no valid assignment of the 2004 original policy to AmFirst Bermuda or replacement of that 2004 policy with a new policy between him and AmFirst Bermuda with substantially different terms/exclusions than his 2004 policy. He argued that the purported assignment was invalid, both because AmFirst USA did not comply with policy requirements for effectuating a valid assignment and because it failed to provide him with notice of the assignment; and he claimed that he was never given notice of any amendments to his coverage.

By order entered August 6, 2019, the court granted petitioner's motion to compel arbitration, finding that although AmFirst USA claimed the arbitration provision in the 2004 policy was no longer valid as the policy no longer existed, there was nevertheless "no dispute that in 2004, a contract was formed between these parties that contained an arbitration agreement which plaintiff now seeks to enforce." Jose Evenor Taboada A. v. AmFirst Ins. Co., No. 3:18CV883TSL-RHW, 2019 WL 3604613, at *4 (S.D. Miss. Aug. 6, 2019).

Arbitrator's Findings

The case proceeded to arbitration. Following a final hearing, the arbitrator made the following findings and conclusions:

Petitioner was issued a policy by Respondent in 2004.

3

> The policy provided coverage for organ (liver) transplants for at least $150,000.
>
> Subsequent policies deleted this coverage and also excluded coverage for alcohol-related illnesses.
>
> Each renewal policy with a schedule of benefits was delivered to petitioner's agents, and hence was constructively delivered to petitioner himself.
>
> Petitioner's denial that he received and/or read these policies, and specifically the policy in effect in 2017, was not credible.
>
> Since petitioner received the policies and had an opportunity to read them, whether he did so or not is irrelevant since under the law, he is presumed to know and understand their terms.
>
> Petitioner's wife became seriously ill in 2017 with liver failure, cirrhosis, requiring hospitalization.
>
> Requests for verification/precertification for treatment by Georgetown Hospital and Johns Hopkins University Hospital were denied by Respondent on the basis that the policy in effect contained an exclusion for alcohol-related illness.
>
> Petitioner's wife underwent a liver transplant in August 2017 at a Miami, Florida hospital.
>
> Petitioner never submitted a proof of claim for any of this treatment and no claim was ever denied under either the original 2004 policy or the 2017 policy in effect at the time of treatment.
>
> Absent waiver, a proof of claim is a condition precedent to coverage under both the 2004 policy and 2017 policy.
>
> There was no proof of any waiver.

On the basis of these findings, the arbitrator denied petitioner's claim for payment of medical expenses.

4

Standard of Review

The FAA reflects a strong policy favoring arbitration. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 586-590, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). In light of this, "judicial review of an arbitration award is extraordinarily narrow" and "exceedingly deferential." Cooper v. WestEnd Capital Mgmt., L.L.C., 832 F.3d 534, 543-44 (5th Cir. 2016) (citations omitted); Pfeifle v. Chemoil Corp., 73 F. App'x 720, 723 (5th Cir. 2003) (judicial review of arbitration awards is "among the narrowest known to the law"). "Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987). Rather, the FAA provides for "just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Hall St. Assocs., 552 U.S. at 588, 128 S. Ct. 1396. Thus, a party seeking vacatur of an arbitration award "must clear a high hurdle." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671, 130 S. Ct. 1758, 1767, 176 L. Ed. 2d 605 (2010) (stating that "[i]t is not enough for [a party seeking vacatur] to show that the [arbitration] panel committed an error—or even a serious error."); see also Antwine v. Prudential Bache Sec., Inc., 899 F.2d 410, 413 (5th Cir. 1990)

5

(stating that courts "should defer to the arbitrator's decision when possible.").

FAA sections 10 and 11, respectively, provide the exclusive grounds for vacating or modifying an arbitration award.  Hall St. Assocs., 552 U.S. at 588, 128 S. Ct. 1396.  Under § 10, an award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Under § 11, a court may modify or correct an award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.  The party seeking to modify or vacate an award has the burden of showing the existence of at least one of these prescribed grounds for such relief, failing which the award must be confirmed.  Cooper, 832 F.3d at 544.  Any doubts or uncertainties as to whether the party has sustained this burden must be resolved in favor of upholding the award.  Id.

Petitioner Taboada's motion to vacate the arbitrator's award centers on the following statement in footnote 1 of the arbitrator's ruling:  "Respondent is collectively referred to as AmFirst Insurance Company and AmFirst, Ltd. (Bermuda).  The companies are the same for this Arbitration and are not an issue."  Petitioner insists that the only claims that this court compelled to arbitration and the only claims which he asserted in the arbitration were against AmFirst USA *under the 2004 policy*; he made no claim against AmFirst Bermuda under that or any other policy.  Yet the arbitrator treated AmFirst USA and AmFirst Bermuda as "the same" for purposes of the arbitration, exceeding his authority and engaging in misbehavior prejudicing petitioner in doing so by, in effect, expanding the scope of the arbitration and his arbitration award to include AmFirst Bermuda, a nonparty over which he had no jurisdiction.

For its part, AmFirst USA acknowledges that petitioner sought and obtained an order compelling arbitration in accordance with the terms of the arbitration provision in the

7

2004 policy issued by AmFirst USA to petitioner. It further acknowledges that up to the time of the arbitration hearing, it maintained the position that because it had assigned the 2004 policy to AmFirst Bermuda, which had assumed all its obligations under the policy, and because each subsequent renewal policy was issued by AmFirst Bermuda, not AmFirst USA, it followed that petitioner should have brought his demand for arbitration and his arbitration claims against AmFirst Bermuda and that the claims against AmFirst USA therefore should be dismissed. However, David White, president of both AmFirst USA and AmFirst Bermuda, who was present during and participated in the arbitration proceedings, explains in an affidavit that during opening statements in the final arbitration hearing, AmFirst USA's counsel, who is also counsel for AmFirst Bermuda, informed the arbitrator, on behalf of both AmFirst USA and AmFirst Bermuda, that they were no longer pursuing the defense that petitioner had demanded arbitration against the wrong party. That is, they would not dispute which was the proper insurer and would instead arbitrate and agree to be bound by the arbitrator's decision as to which policy and which terms controlled as to petitioner's claim for benefits. According to White's affidavit, petitioner raised no objection to proceeding in this manner.

An arbitrator's powers and authority are "dependent on the provisions under which the arbitrator[] [was] appointed." Brook v. Peak Int'l, Ltd., 294 F.3d 668, 672 (5th Cir. 2002) (internal quotation and citation omitted). Addressing a court's authority to set aside an arbitral award on the basis that an arbitrator has exceeded his powers, the Fifth Circuit has stressed that an arbitrator's decision must be sustained "as long as [his] decision 'draws its essence' from the contract—even if we disagree with the arbitrator's interpretation of the contract." Timegate Studios, Inc. v. Southpeak Interactive, L.L.C., 713 F.3d 797, 802 (5th Cir. 2013) (quoting Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994)). The court explained:

> The question is whether the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to manifest an infidelity to the obligation of an arbitrator. Thus, the substantive question of whether an arbitrator has exceeded his arbitration powers is a function of our highly deferential standard of review in such cases: an arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the "essence" of the contract.

Id. at 802-03 (internal quotations and citations omitted). Under this standard, it is irrelevant whether the reviewing court disagrees with the arbitrator's interpretation of the contract. Timegate Studios, 713 F.3d at 802. "The reviewing court considers only the arbitrators' resulting decision and

9

'does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract.'" Soaring Wind Energy, LLC v. CATIC, USA, Inc., 333 F. Supp. 3d 642, 651-52 (N.D. Tex. 2018), aff'd sub nom. Soaring Wind Energy, L.L.C. v. Catic USA Inc., 946 F.3d 742 (5th Cir. 2020) (quoting Executone, 26 F.3d at 1325).  See also United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

In the present case, there can be no question but that the arbitrator acted within his authority in deciding the issues of whether AmFirst Bermuda validly assumed AmFirst USA's obligations under the 2004 policy and whether the 2004 policy was replaced in 2016 by a new contract between petitioner and AmFirst Bermuda with very different terms from those of the original policy and with explicit coverage exclusions for alcohol-related illnesses and for organ transplants, exclusions that were not part of, and in fact are inconsistent with, the 2004 policy.  This is precisely the position petitioner advanced in the court in seeking to compel arbitration.  In his brief in

support of his motion to compel arbitration, petitioner asserted, *inter alia*:

> AmFirst [Bermuda] can be considered a necessary party only if its purported assumption of AmFirst Co.'s obligations under the Policy—and its substitution for Respondent as a party to the Policy as a matter of contract law—was valid. Mr. Taboada denies that it was valid, as a matter of both fact (it did not comply with the terms of the Policy and he was not notified of it) and law (it exceeded AmFirst Co.'s authority under the Policy and did not comply with applicable legal requirements). The task of adjudicating the merits of these competing positions, however, is not before the Court. Indeed, those questions fall squarely within the terms of the Policy's arbitration provision, and must be addressed and resolved, according to the terms of Respondent's standard-form contract, by the Arbitrator.
>
> …
>
> Whether the (2004) Policy was assigned, transferred, or assumed (by AmFirst Bermuda) pursuant to its terms is a dispute 'aris[ing] from or in relation to [the Policy], or its alleged infringement,' because whether the supposed assumption was or was not valid depends on the proper interpretation of the Policy. Whether the purported replacement of the Policy by a new arrangement in 2016 was effective likewise is a dispute 'aris[ing] from or in relation to [the Policy], or its alleged infringement,' for the same reasons: it turns on whether the Policy permitted such an alteration, and even if it did, whether Mr. Taboada was put on notice that the terms of his contract had radically changed. Once this case is before the Arbitrator, the parties will presumably litigate these disputes, and ultimately, the outcome will depend on the determination of the identity of the insurer and the terms of the insurance policy in effect in 2017, when Ms. Taboada was hospitalized and AmFirst Co. declined to cover the attendant costs.

In his reply in support of his motion to compel arbitration, petitioner repeated this position:

11

> Respondent AmFirst [USA] argues that Petitioner's claims are not within the scope of the arbitration agreement in the Policy, even though they would be subject to the arbitration clause in the 2016 document [the 2017 Policy] that Respondent contends replaced the Policy. This is a classic example of a question of arbitrability that the parties can, and in this case did, delegate to the arbitrator. Only an arbitrator selected in accordance with the procedures set forth in the arbitration agreement, therefore, can resolve the issue of arbitrability that Respondent raises….

As petitioner predicted, once the case was before the arbitrator, the parties litigated and the arbitrator ruled on these very issues. The arbitrator concluded that AmFirst Bermuda's purported assumption of AmFirst USA's obligations under the 2004 policy, and the substitution of AmFirst Bermuda for AmFirst USA as a party to the 2004 policy was valid as a matter of fact and of contract law. Thus, the arbitrator found that AmFirst Bermuda became petitioner's insurer under the 2004 policy. He further concluded that the renewal/replacement policies thereafter issued to petitioner by AmFirst Bermuda were effective, including the 2017 policy, which excluded coverage for organ transplants and for treatment for alcohol-related illnesses. He also specifically found that petitioner, having been provided copies of these policies, directly or through his agent, was on notice of the terms of the policies, including the referenced exclusions in the 2017 policy which was in effect when petitioner's wife was hospitalized for cirrhosis and

subsequently underwent a liver transplant. Having previously contended that these very issues were within the scope of the arbitration and for decision by the arbitrator, petitioner cannot reasonably now contend that the arbitrator exceeded his authority in deciding these matters. The only question is whether the arbitrator overstepped his authority in further holding that petitioner is precluded from recovering the cost of his wife's treatment for cirrhosis (including the liver transplant) under the 2017 policy because coverage for these costs is excluded under the express terms of the 2017 policy and/or because the terms of the policy require submission of a proof of claim and no proof of claim was ever submitted. In the court's opinion, he did not.

   Petitioner's objection, in summary, is that he did not agree to arbitrate *in this arbitration proceeding* any dispute he may have with or claim he may have against AmFirst Bermuda. He insists that since he demanded, and the court compelled arbitration based solely on the arbitration agreement in the 2004 policy, to which AmFirst Bermuda was not a party, of his claimed entitlement to benefits under the 2004 policy, then it follows that there was no agreement between him and AmFirst Bermuda to arbitrate the claims at issue in the arbitration. The arbitrator, he submits, thus exceeded his authority by purporting to determine the issue of coverage under the 2017

policy issued by AmFirst Bermuda. He maintains that since AmFirst Bermuda was not a party to the arbitration proceeding and since he did not agree to arbitrate any claim against AmFirst Bermuda in this arbitration proceeding, then the arbitrator's award must be vacated, or at least modified to correct his "mistake" in treating AmFirst Bermuda and AmFirst USA as "the same" for purposes of the arbitration.

In the court's opinion, however, there is no merit to petitioner's contention that the arbitrator's treatment of the AmFirst entities as "the same" for purposes of the arbitration was a "mistake" in any sense of the word. And the court is further of the view that the arbitrator was at least arguably construing the contract and acting within the scope of his authority in effectively treating AmFirst Bermuda as a party to the arbitration, notwithstanding that it had not been formally made a party to the arbitration, and in deciding the issue of coverage under the 2017 policy.

Petitioner's primary argument, that no written arbitration agreement existed between him and AmFirst Bermuda, is incorrect. It is true that AmFirst Bermuda was not a party to the 2004 arbitration agreement when the policy was issued. However, the arbitrator, acting within his admitted authority, found that in 2005, AmFirst USA validly assigned and AmFirst Bermuda validly assumed AmFirst USA's obligations under the 2004 policy,

14

including the arbitration agreement, which thus became enforceable by and against AmFirst Bermuda.  See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009) (arbitration agreements may be enforced by or against nonparties to the contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel") (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)).  Accordingly, contrary to petitioner's urging, there was an agreement in writing to arbitrate any and all disputes between petitioner and AmFirst Bermuda arising from or relating to the 2004 policy.

Furthermore, it follows from the arbitrator's findings that there was also a valid agreement between petitioner and AmFirst Bermuda to arbitrate any claims or disputes arising from or relating to the 2017 policy.  And, although AmFirst Bermuda was not formally named as a party to the arbitration proceeding, the record evidence is undisputed that AmFirst USA proposed that AmFirst Bermuda be included in the arbitration so the arbitrator could reach the merits of the coverage issue, and petitioner did not object.  Petitioner argues to the court that there is "no proof at all in the record" that this, in fact, occurred.  On the contrary, while there is no transcript of the arbitration hearing, there is nevertheless competent proof in the form of

15

David White's affidavit, in which he relates precisely what transpired during the arbitration hearing.  Petitioner, who has the heavy burden to support his motion to vacate, has offered no evidence to refute White's version of these events.

Petitioner further argues that even if the court is persuaded that AmFirst USA has proved that he did not object to including AmFirst Bermuda in the arbitration, such proof is immaterial because as a matter of law, his failure to object does not equate to consent to arbitrate; the FAA requires that there be a written agreement to arbitrate the subject claim(s), and "there is no evidence of an agreement in writing between Petitioner and AmFirst Bermuda" to arbitrate the claims at issue; and the arbitrator lacked authority to determine whether there existed a valid agreement to arbitrate between petitioner and AmFirst Bermuda, as that is an issue for the court. Petitioner's position on each of these points is unfounded.

First, this is not a case where a party is alleged to have agreed to arbitrate a claim merely by his silence.  It is undisputed that, like the 2004 policy, the 2017 policy issued by AmFirst Bermuda -- which the arbitrator found to be effective and to be the operative policy with respect to the medical expenses that are the subject of petitioner's claim -- included an arbitration agreement requiring petitioner and AmFirst Bermuda to arbitrate

David White's affidavit, in which he relates precisely what transpired during the arbitration hearing.  Petitioner, who has the heavy burden to support his motion to vacate, has offered no evidence to refute White's version of these events.

Petitioner further argues that even if the court is persuaded that AmFirst USA has proved that he did not object to including AmFirst Bermuda in the arbitration, such proof is immaterial because as a matter of law, his failure to object does not equate to consent to arbitrate; the FAA requires that there be a written agreement to arbitrate the subject claim(s), and "there is no evidence of an agreement in writing between Petitioner and AmFirst Bermuda" to arbitrate the claims at issue; and the arbitrator lacked authority to determine whether there existed a valid agreement to arbitrate between petitioner and AmFirst Bermuda, as that is an issue for the court. Petitioner's position on each of these points is unfounded.

First, this is not a case where a party is alleged to have agreed to arbitrate a claim merely by his silence.  It is undisputed that, like the 2004 policy, the 2017 policy issued by AmFirst Bermuda -- which the arbitrator found to be effective and to be the operative policy with respect to the medical expenses that are the subject of petitioner's claim -- included an arbitration agreement requiring petitioner and AmFirst Bermuda to arbitrate

> any and all disputes, claims, or controversies arising out of or relating to this Certificate, or its alleged breach, that are not resolved by the parties herein, shall be submitted to final and binding arbitration. … Such arbitration shall be the sole remedy for any disputes, claims or controversies on this Certificate….

Thus, in addition to the 2004 arbitration agreement, which was enforceable by and against both petitioner and AmFirst Bermuda, the 2017 policy contained a valid written agreement between petitioner and AmFirst Bermuda to arbitrate, which plainly included within its scope any claim relating to coverage under the 2017 policy. Moreover, there is uncontroverted evidence that petitioner did not object when counsel purporting to represent both AmFirst USA and AmFirst Bermuda announced to the arbitrator that AmFirst USA was dropping its defense that it was not the proper party and proposed to include AmFirst Bermuda in the arbitration. Given these facts, particularly in the further light of petitioner's clear position from the outset of this litigation that the arbitrator would decide "the identity of the insurer and the terms of the insurance policy in effect in 2017", the court is not persuaded that the arbitrator exceeded his authority, or engaged in misbehavior, by treating AmFirst Bermuda, in effect, as a *de facto* party to the arbitration and deciding the issue of coverage under the 2017 policy. See Lawlor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 19-CV-4145 (BMC), 2019 WL 6253808, at *2 (E.D.N.Y. Nov. 22, 2019)

(quoting Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co., 184 F. Supp. 738, 742 (S.D.N.Y. 1960)) (explaining that a matter is properly submitted to an arbitrator if it is "'placed before [the arbitrator] for adjudication under circumstances which afforded the parties adequate notice.'").[2]

In sum, the salient facts are these: Petitioner sought to have the arbitrator determine "the identity of the insurer and the terms of the insurance policy in effect in 2017" and argued to this court that the outcome of the subject arbitration would

---

[2] Given the court's conclusion that the arbitrator did not act improperly or mistakenly in adjudicating the issue of coverage under the 2017 policy issued by AmFirst Bermuda, the court need not consider whether his ruling has prejudiced petitioner. The court would note, though, that as to the issue of coverage, petitioner has not claimed or demonstrated that he has been prejudiced by the arbitrator's ruling. The arbitrator's conclusion that the 2017 policy was the operative and effective policy at the time of petitioner's wife's treatment – his ruling on a matter indisputably within his purview -- would have been dispositive of petitioner's claim for coverage under the 2017 policy in any event, any claim for coverage, because that policy, by its clear terms, excludes coverage for his wife's treatment, and also because the arbitrator found as a matter of fact that no proof of claim was submitted, a condition precedent to coverage under both policies. Notably, petitioner has suggested no basis on which the 2017 policy could be found to provide coverage for his wife's treatment.

Petitioner does claim that he has been prejudiced to the extent that the arbitrator's ruling may prevent him from pursuing a potential claim for fraud against AmFirst Bermuda for engaging in the sale of insurance in Florida (through an agent) without being licensed in Florida, in violation of Fla. Stat. §626.401(2). The court expresses no opinion as to the preclusive effect of the arbitrator's ruling on any such potential claim.

ultimately depend on the determination of these issues. The arbitrator has now decided those issues: AmFirst Bermuda is the insurer, and the policy in effect at the time of the treatment, and which is binding on petitioner, is the 2017 policy.[3] By its clear terms, that policy provides no coverage for his wife's treatment. Petitioner has demonstrated no valid basis for vacating or modifying the arbitrator's award. The arbitrator did not exceed his authority and there was otherwise no misbehavior on his part, and there was no mistake warranting modification.

Accordingly, it is ordered that petitioner's motion to vacate the award is denied and the arbitration award in favor of AmFirst USA and AmFirst Bermuda is hereby confirmed.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 24th day of July, 2020.

/s/ Tom S. Lee                .
UNITED STATES DISTRICT JUDGE

---

[3]  AmFirst Bermuda is a necessary party herein based on these findings and conclusions by the arbitrator.